IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL RAMON PEREZ,

        Petitioner,

    v.

GARY KILMER,

        Respondent.

Case No. 3:11-cv-00127-ST

FINDINGS AND RECOMMENDATION

    C. Renee Manes, Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    Ellen F. Rosenblum, Attorney General
    Nicholas M. Kallstrom, Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state court convictions for Murder and Unlawful Use of a Weapon. For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #1) should be denied.

## BACKGROUND

On May 10, 2001, petitioner lured William Blankenship to his home and bludgeoned him to death with a hammer. When interviewed by police, petitioner readily admitted his culpability for the crime. He informed the officers that he had planned to murder Blankenship and bury him in a grave in his yard that he had previously excavated for that purpose. Petitioner further explained that he had committed the murder because he had developed feelings for the victim's girlfriend, Christine Hert, and that Blankenship had been physically and verbally abusive to her in the past. Trial Transcript, pp. 275-80. As a result, the Deschutes County Grand Jury indicted petitioner on charges of Murder, Unlawful Use of a Weapon, and two counts of Kidnaping.[1] Respondent's Exhibit 103.

Petitioner proceeded to a jury trial and was convicted of Murder and Unlawful Use of a Weapon, but acquitted on the kidnaping

---

[1] The Kidnaping charges arose from petitioner's restraint of Blankenship's girlfriend immediately after the bludgeoning.

2 - FINDINGS AND RECOMMENDATION

charges. As a result, the trial court sentenced petitioner to 300 months in prison. Respondent's Exhibit 101.

Petitioner filed a direct appeal. The Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review. *State v. Perez*, 207 Or. App. 648, 143 P.3d 267 (2006), *rev. denied*, 342 Or. 344, 153 P.3d 123 (2007).

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County, but the PCR trial court denied relief. Respondent's Exhibit 126. The Oregon Court of Appeals affirmed the PCR court without opinion, and the Oregon Supreme Court denied review. *Perez v. Coursey*, 237 Or. App. 690, 243 P.3d 159, *rev. denied*, 349 Or. 370, 246 P.3d 482 (2010).

Petitioner filed this federal habeas corpus case on February 1, 2011. In his Petition for Writ of Habeas Corpus, petitioner raises ten grounds for relief. With the assistance of counsel, he elected to argue four of those grounds:

> Ground Three:
>   Trial counsel was ineffective when he failed to object to the admission of petitioner's statements to police as being involuntary and in violation of petitioner's right to counsel;
>
> Ground Five:
>   Trial counsel failed to object to prosecutorial misconduct when the prosecutor improperly commented on the legal validity of the insanity defense and personally attacked trial counsel;
>
> Ground Nine:
>   Trial counsel failed to present adequate evidence to prove the guilty but insane defense; and

3 - FINDINGS AND RECOMMENDATION

      Ground Ten:
          Trial counsel failed to properly interview and prepare petitioner's mother for her testimony at trial.

Petition for Writ of Habeas Corpus (docket #1), pp. 3-3(a).

Respondent asks the court to deny relief on the Petition because: (1) Petitioner has waived the claims he has not argued; (2) Ground Nine is procedurally defaulted; and (3) all claims lack merit.

## FINDINGS

### I. Unargued Claims

An application for a writ of habeas corpus shall not be granted unless petitioner can demonstrate that adjudication of a claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  That statute "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.  It goes no farther."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  Importantly, petitioner is responsible for meeting this substantial burden.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

Petitioner has not argued the merits of Grounds One, Two, Four, Six, Seven, or Eight.[2] Similarly, he has not addressed any of respondent's arguments as to why relief on these claims should be denied. Petitioner has therefore not met his burden of proof as to his unargued claims. Notwithstanding this failure, the court has reviewed petitioner's unargued claims on the existing record and finds that they do not entitle him to habeas corpus relief. As a result, relief on the unargued claims should be denied.

## II.   Exhaustion and Procedural Default (Ground Nine)

### A.   Standards

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed

---

[2] Petitioner's argument in support of Ground Nine encompasses and supports Ground Ten. Thus, contrary to the State's argument, the court concludes that petitioner has argued the merits of Ground Ten.

5 - FINDINGS AND RECOMMENDATION

to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

**B.  Analysis**

As Ground Nine, petitioner alleges that trial counsel failed to present adequate evidence that petitioner was guilty but insane. He did not present this claim to the PCR trial court. Respondent's Exhibit 109. While he did present the related claim that counsel failed to properly interview and prepare petitioner's mother for her trial testimony which supported the insanity defense

(Respondent's Exhibit 109, p. 4), that claim is significantly narrower than the one petitioner argues as Ground Nine. Indeed, petitioner's PCR claim as to counsel's preparation of petitioner's mother is alleged separately as Ground Ten of his Petition for Writ of Habeas Corpus.

While petitioner raised and argued the substance of Ground Nine to the Oregon Court of Appeals, his failure to first preserve the claim at his PCR trial rendered the claim ineligible for appellate review. *See Ploplys v. Bryson*, 188 Or. App. 49, 58, 69 P.3d 1257 (2003); *Bowen v. Johnson*, 166 Or. App. 89, 92, 999 P.2d 1159, 1160 (2000). Accordingly, petitioner failed to fairly present Ground Nine to Oregon's state courts. Because the time for presenting that ineffective assistance of counsel claim passed long ago, it is procedurally defaulted, and petitioner has not excused his default.

### III. The Merits

#### A. Standard of Review

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

7 - FINDINGS AND RECOMMENDATION

Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B. Analysis

#### 1. Ground Three: Statements to Police

Ground Three alleges that petitioner was the victim of ineffective assistance of counsel when trial counsel failed to object to the admission of his statements to police as being involuntary and in violation of his right to counsel. Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of

reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 123.

Petitioner argues that because the incriminating statements he gave to police following Blankenship's murder were involuntary, counsel should have moved to exclude them. The PCR trial court rejected petitioner's claim by finding no ground upon which to suppress petitioner's statements to police because petitioner told counsel that he understood his rights. Respondent's Exhibit 125, p. 14.

9 - FINDINGS AND RECOMMENDATION

An incriminating statement by a defendant cannot be used if the statement was involuntary. *Columbe v. Connecticut*, 367 U.S. 568, 602 (1961). A statement is involuntary only where coercive police conduct is causally related to the incriminating statement. *Colorado v. Connelly*, 479 U.S. 157, 164 (1987).

It is undisputed that the police handcuffed petitioner and read him his *Miranda* rights after finding Blankenship on the floor of petitioner's home. Trial Transcript, pp. 87-89. Petitioner claims that his subsequent statements were nevertheless involuntary because the police ignored his request for an attorney. In petitioner's PCR deposition, he testified that he did not think he told his trial attorney that he had been refused an attorney. Respondent's Exhibit 121, p. 9. Counsel cannot be faulted for not moving to suppress petitioner's statements based on information counsel never had.

Petitioner also contends that trial counsel was on notice of petitioner's compromised mental state at the time he received his *Miranda* warnings. He points to the fact that he thought the murder was justified to protect the victim's girlfriend from further physical abuse and told police that the murder felt so right, it just could not be wrong. Respondent's Exhibit 119, p. 3. He also points to the PCR affidavit of trial counsel stating that he did not believe petitioner "possessed the mental capacity to understand

why society believes ending another person's life is wrong and that he must be held accountable for his own actions." *Id* at 1.

Petitioner's mental state at the time of his post-*Miranda* confession is not a sufficient basis for exclusion of his inculpatory statements. *Connelly*, 479 U.S. at 166. Accordingly, trial counsel had no proper basis to move to exclude petitioner's confession. Thus, trial counsel's performance did not fall below an objective standard of reasonableness.

### 2.    Ground Five: State's Closing Argument

Petitioner next faults trial counsel for not objecting to the State's closing argument when the prosecutor: (1) commented on the validity of the insanity defense; and (2) personally attacked defense counsel. The PCR trial court rejected this claim, finding that the prosecutor's "statements in closing were proper since this was an argument." Respondent's Exhibit 125, p. 14. Petitioner claims that this decision was contrary to clearly established federal law.

Prosecutorial misconduct during closing argument can render a trial fundamentally unfair if the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Wide latitude is given to closing arguments, and even where a closing argument is inflammatory, it will not amount to a

11 - FINDINGS AND RECOMMENDATION

constitutional violation where "it did not manipulate or misstate the evidence." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

The court has carefully reviewed the relevant portion of the transcript and finds that, contrary to petitioner's assertions, the prosecutor's closing and rebuttal arguments were proper. The prosecutor did challenge the credentials and conclusions of the defense's expert witness, but such a critical review of that testimony (including comparing and contrasting the qualifications of the competing experts) was well within the range of reasonable and acceptable advocacy.[3] Trial Transcript, pp. 749-54, 761-62.

The prosecutor also questioned the veracity of petitioner's insanity defense by arguing that : (1) petitioner lied several times to the officers who came to his house on the night of the murder; and (2) as testified to by the State's expert witness, petitioner was not being truthful about the psychosis that allegedly led him to kill Blankenship. *Id* at 741-47. Because this argument did not manipulate or misstate the evidence, it was not inappropriate.

Petitioner also claims that the prosecutor attacked the defense attorneys as manipulative and lacking integrity. The prosecutor made no attack on the credibility of defense counsel. Moreover, while the prosecutor did allege manipulation of the facts

---

[3] Petitioner in this proceeding describes his defense as "anchored by a possibly unqualified expert." Memorandum in Support (docket #45, p. 17).

12 - FINDINGS AND RECOMMENDATION

(Trial Transcript, p. 761), he was entitled to argue the facts as he saw them and to propose that the defense had spun the facts in its favor. Because such a characterization in no way injected the trial with fundamental unfairness, no objection was warranted.

### 3. Ground Ten: Interview and Preparation of Petitioner's Mother

Finally, Ground Ten alleges that trial counsel failed to prepare petitioner's mother for her testimony to support his insanity defense. During his PCR deposition, petitioner testified that counsel should have "let [his mother] know what kind of questions [the prosecutors were] going to ask her so she can be ready for what they're going to ask her." Respondent's Exhibit 121, p. 21. In a Declaration filed with the PCR trial court, petitioner's mother stated:

> I never met with [petitioner's] attorney prior to the Trial and he didn't inform me what questions he was going to ask, the time frames he was going to ask about, nor the information he wanted me to provide to the Jury. This resulted in me not testifying clearly and causing me to get confused. It made my testimony sound unreliable and conflicting.

Respondent's Exhibit 116, p. 2.

Trial counsel submitted his own affidavit in which he stated that he:

> spoke several times with . . . petitioner's mother[] about her son's mental health condition and history. It was my intention to use her knowledge of his mental health and history as supporting evidence for our defense of guilty except for insanity.

13 - FINDINGS AND RECOMMENDATION

> I told [petitioner's mother] in broad terms that the District Attorney would question her regarding petitioner's drug use in order to attempt to establish the basis for drug-induced psychosis. That would have been one of their responses to our defense of guilty except for insanity.

Respondent's Exhibit 124, p. 1.

The PCR trial court made the following finding:

> And I find having read the deposition of Petitioner, among other things, that the attorney did prepare the mother for Direct Examination, but obviously could not prepare her for specific questions on Cross, since he couldn't be sure exactly what questions were going to be asked.
>
> So there's always some unknown about preparing any witness for Cross. But I think he did what he could to do prepare her to testify.

Respondent's Exhibit 125, p. 14.

Based on this record, the PCR trial court's conclusions that trial counsel could not have been expected to predict the State's cross-examination, and that he adequately prepared the witness for trial, are reasonable ones. Moreover, even if trial counsel should have better prepared petitioner's mother for her testimony, her affidavit in front of the PCR trial court does not reveal any testimony she could have given that would have had a realistic probability of changing the outcome of the trial. Accordingly, the PCR trial court's decision that petitioner was not denied the effective assistance of counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #1) should be denied and a judgment should be entered dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due November 15, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of October, 2013.

```
             S/   Janice M. Stewart
                  Janice M. Stewart
                  United States Magistrate Judge
```

15 - FINDINGS AND RECOMMENDATION